# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RONG MIAO, derivatively on behalf of PALANTIR TECHNOLOGIES, INC., | |
| Plaintiff, | **C.A. No.** |
| v. | |
| ALEXANDER C. KARP, DAVID GLAZER, SHYAM SANKAR, STEPHEN COHEN, ALEXANDER MOORE, SPENCER RASCOFF, ALEXANDRA SCHIFF, LAUREN FRIEDMAN STAT, and PETER THIEL, | **DEMAND FOR JURY TRIAL** |
| Defendants, | |
| and | |
| PALANTIR TECHNOLOGIES, INC., | |
| Nominal Defendant. | |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## INTRODUCTION

Plaintiff Hong Miao ("Plaintiff"), by and through his undersigned attorneys, derivatively and on behalf of nominal defendant Palantir Technologies, Inc. ("Palantir" or the "Company"), brings this derivative action against defendants Alexander C. Karp, David Glazer, Shyam Sankar, Stephen Cohen, Alexander Moore, Spencer Rascoff, Alexandra Schiff, Lauren Friedman Stat, and Peter Thiel (collectively, the "Individual Defendants," and together with Palantir, the "Defendants") for breaches of their fiduciary duties as directors and/or officers of Palantir and against Defendants Karp, Cohen, Moore, Rascoff, Schiff, Stat and Thiel for violations of Section 14(a) of the Exchange Act. Plaintiff alleges the following upon personal knowledge as to himself

1

and his own acts, and as to all other matters upon information and belief, based upon his attorneys' investigation, including, *inter alia*, an evaluation of: (i) Palantir's publicly available documents; (ii) Palantir's conference calls and press releases; (iii) United States Securities and Exchange Commission ("SEC") filings; (iv) legal filings; (v) news publications; (vi) analyst reports pertaining to Palantir; and (vii) information readily obtainable on the Internet.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought on behalf of Palantir against the Individual Defendants for wrongdoing committed between November 9, 2021 and May 6, 2022 (the "Relevant Period").

2.      Founded in 2003, Palantir designs software for businesses and organizations, both domestic and international, to optimize decisions and operations through analyzing data. The Company began by designing software for the United States Government's intelligence organizations to aid in counterterrorism activities. The Company is divided into two parts: governmental and commercial.

3.      In addition to designing software, Palantir invests in marketable securities of publicly traded companies.

4.      The Company has asserted that recent world-wide events, including war, economic instability, and the COVID-19 pandemic, are a boon for its business since Palantir's products are intended to aid businesses and organizations in dealing with disruptive events.

5.      On May 9, 2022, Palantir published its first quarter of 2022 financial performance in a press release. The release reported that the Company's adjusted earnings per share ("EPS") was just $0.02, despite analysts projecting EPS of $0.04 per share. That same day, in a conference

call, the Company conceded that the EPS number "include[d] a negative $0.02 impact driven primarily by unrealized losses on marketable securities."

6.     In the same press release, the Company reported that government revenue grew by 16% year-over-year. When compared against previous quarters, the revenue growth was lackluster and indicated a material decline in revenue. Further, Palantir estimated just $470 million in sales for the second quarter of 2022, significantly less than analyst estimates of $483.76 million.

7.     On this news, the price of Palantir's securities fell $2.02, or 21.31%, from $9.48 per share at the close of trading on May 6, 2022 to $7.46 per share at the close of trading on May 9, 2022.

8.     Additionally, on May 9, 2022, several news organizations reported that Palantir's decline in revenue took investors by surprise because the Company previously flouted the occurrence of armed conflict such as the Russian invasion of Ukraine and the ongoing COVID-19 pandemic as events that would bolster the Company's business.

9.     Throughout the Relevant Period, the Individual Defendants breached their fiduciary duties to Palantir by personally making and/or causing Palantir to make to the investing public a series of materially false and misleading statements and omissions about Palantir's business prospects and overall operations. In particular, the Individual Defendants willfully or recklessly made and/or caused Palantir to make false and misleading statements that failed to disclose, *inter alia*, that: (i) Palantir's EPS numbers were negatively impacted by the Company's investments in securities; (ii) Palantir exaggerated the overall sustainability of the Company's government sector in relation to growth and revenue; (iii) in result, Palantir's revenue growth in the government sector was falling despite the ongoing occurrence of several international crises; (iv) as a consequence of the foregoing, it was probable the Company would be unable to reach its projections for the first

quarter of 2022 EPS as well as its second quarter of 2022 sales estimates; and (v) Palantir failed to maintain internal controls. Consequently, Palantir's public statements were materially false and misleading at all relevant times.

10.     The Individual Defendants willfully or recklessly caused the Company to fail to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls over financial reporting. The Individual Defendants also breached their fiduciary duties by failing to correct and/or causing Palantir to fail to correct these false and misleading statements and omissions of material fact, while, during the Relevant Period, six Individual Defendants engaged in insider trading by selling Palantir shares at inflated prices for combined total proceeds in excess of $99.37 million.

11.     In light of the Individual Defendants' misconduct, which has subjected the Company, its Chief Executive Officer ("CEO"), its Chief Financial Officer ("CFO"), and its Chief Operation Officer to being named as defendants in a federal securities fraud class action lawsuit pending in the United States District Court for the District of Colorado (the "Class Action"), and which has further subjected Palantir to the need to undertake internal investigations and the need to implement adequate internal controls—Palantir will have to expend many millions of dollars.

12.     Palantir has been substantially damaged as a result of the Individual Defendants' knowing or highly reckless breaches of fiduciary duty and other misconduct.

13.     Demand is excused as Palantir's Board cannot consider a demand to initiate litigation against themselves and the other Individual Defendants on behalf of the Company with a requisite level of disinterestedness and independence required. In light of the Individual Defendants', most of whom are Palantir's current directors, breaches of fiduciary duty, their collective participation in fraud, the substantial likelihood of their liability in this derivative action,

the CEO's, CFO's, and COO's liability in the Class Action, and their not being disinterested and/or independent directors, a majority of the Board cannot consider a demand.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act, 15. U.S.C. § 78n(a)(1) and Rule 14a-9 of the Exchange Act, 17 C.F.R. § 240.14a-9.

15.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

16.    Plaintiff's claims also raise a federal question pertaining to the claims made in the Class Action based on violations of the Exchange Act.

17.    This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

18.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, the Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

19.    Venue is proper in this District because Palantir and the Individual Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

## PARTIES

### Plaintiff Miao

20.    Plaintiff Miao currently owns Palantir common stock and has continuously held Palantir common stock since November 22, 2021.

### Defendant Karp

21.     Defendant Alexander C. Karp ("Karp") co-founded Palantir and has served as the Company's CEO and as a director since 2003. As of April 13, 2022, Defendant Karp owned 6,432,258 shares of Palantir's Class A common stock, 60,072,785 shares of Class B common stock (representing 53.1%), and 335,000 shares of Class F common stock (representing 33.3%). At the close of trading on April 13, 2022, Palantir's stock price was $12.90 per share, thus, Defendant Karp owned approximately $82,976,128 worth of Palantir stock as of that date.

22.     Defendant Karp's compensation for the fiscal year ended December 31, 2021 ("FY 2021"), was $4,483,614, of which $1,101,637 was in salary and $3,381,977 was in other compensation.

23.     Defendant Karp also sold 2,890,887 shares of Palantir stock at artificially inflated prices while in possession of inside information. Karp received approximately $63,578,724 in proceeds from the insider sales, exposing his motive for taking part in the misconduct.

**Defendant Glazer**

24.     Defendant David Glazer ("Glazer") currently serves as Palantir's CFO and Treasurer. As of April 13, 2022, Defendant Glazer owned 1,434,703 shares of Palantir's Class A common stock. At the close of trading on April 13, 2022, Palantir's stock price was $12.90 per share, thus, Defendant Glazer owned approximately $18,507,669 worth of Palantir stock as of that date.

25.     Defendant Glazer's compensation for FY 2021 was $475,722, of which $450,000 was in salary and $25,522 was in other compensation.

26.     Defendant Glazer also sold 402,380 shares of Palantir stock at artificially inflated prices while in possession of inside information. Glazer received approximately $6,448,792 in proceeds from the insider sales, exposing his motive for taking part in the misconduct.

6

**Defendant Sankar**

27.     Defendant Shyam Sankar ("Sankar") has served as Palantir's COO and Executive Vice President since July 2020. As of April 13, 2022, Defendant Sankar owned 1,855,624 shares of Palantir's Class A common stock and 6,114,764 of Palantir's Class B common stock. At the close of trading on April 13, 2022, Palantir's stock price was $12.90 per share, thus, Defendant Sankar owned approximately $23,937,550 worth of Palantir stock as of that date.

28.     Defendant Sankar's compensation for FY 2021 was $698,687, of which $509,419 was in salary and $189,268 was in other compensation.

29.     Defendant Sankar also sold 852,202 shares of Palantir stock at artificially inflated prices while in possession of inside information. Sankar received approximately $15,129,140 in proceeds from the insider sales, exposing his motive for taking part in the misconduct.

**Defendant Cohen**

30.     Defendant Stephen Cohen ("Cohen") cofounded Palantir, serves as the Company's President and Secretary, and has served as a director since 2005. As of April 13, 2022, Defendant Cohen owned 592 shares of Palantir's Class A common stock, 26,736,322 of Palantir's Class B common stock, and 335,000 shares of Palantir's Class F common stock (representing 33.3%). At the close of trading on April 13, 2022, Palantir's stock price was $12.90 per share, thus, Defendant Cohen owned approximately $349 million worth of Palantir stock as of that date.

31.     Defendant Cohen's compensation for FY 2021 was $1,928,867, of which $1,229,461 was in salary and $699,406 was in other compensation.

32.     Defendant Cohen also sold 691,844 shares of Palantir stock at artificially inflated prices while in possession of inside information. Cohen received approximately $10,941,017 in proceeds from the insider sales, exposing his motive for taking part in the misconduct.

**Defendant Moore**

33.     Defendant Alexander Moore ("Moore") has served as a Company director since July 2020. He previously served as the director of operations until March 2010. As of April 13, 2022, Defendant Moore owned 1,828,397 shares of Palantir's Class A common stock. At the close of trading on April 13, 2022, Palantir's stock price was $12.90 per share, thus, Defendant Moore owned approximately $23,586,321 worth of Palantir stock as of that date.

34.     Defendant Moore's compensation for FY 2021 was $339,982, of which $65,000 was in fees earned or paid in cash and $274,982 was in RSU awards.

35.     Defendant Moore also sold 173,000 shares of Palantir stock at artificially inflated prices while in possession of inside information. Moore received approximately $2,701,840 in proceeds from the insider sales, exposing his motive for taking part in the misconduct.

**Defendant Rascoff**

36.     Defendant Spencer Rascoff ("Rascoff") served as a Company director from July 2020 until June 2022. As of April 13, 2022, Defendant Rascoff owned 138,506 shares of Palantir's Class A common stock. At the close of trading on April 13, 2022, Palantir's stock price was $12.90 per share, thus, Defendant Rascoff owned approximately $1,786,727 worth of Palantir stock as of that date.

37.     Defendant Rascoff's compensation for FY 2021 was $339,982, of which $65,000 was in fees earned or paid in cash and $274,982 was in RSU awards.

38.     Defendant Rascoff also sold 25,000 shares of Palantir stock at artificially inflated prices while in possession of inside information. Rascoff received approximately $571,425 in proceeds from the insider sales, exposing his motive for taking part in the misconduct.

**Defendant Schiff**

39.     Defendant Alexandra Schiff ("Schiff") has served as a Company director since July 2020. As of April 13, 2022, Defendant Schiff owned 48,453 shares of Palantir's Class A common stock. At the close of trading on April 13, 2022, Palantir's stock price was $12.90 per share, thus, Defendant Schiff owned approximately $625,044 worth of Palantir stock as of that date.

40.     Defendant Schiff's compensation for FY 2021 was $327,482, of which $52,500 was in fees earned or paid in cash and $274,982 was in RSU awards.

**Defendant Stat**

41.     Defendant Lauren Friedman Stat ("Stat") has served as a Company director since January 2021. As of April 13, 2022, Defendant Stat owned 230,055 shares of Palantir's Class A common stock. At the close of trading on April 13, 2022, Palantir's stock price was $12.90 per share, thus, Defendant Stat owned approximately $2,967,710 worth of Palantir stock as of that date.

42.     Defendant Stat's compensation for FY 2021 was $550,004, of which $50,021 was in fees earned or paid in cash and $499,983 was in RSU awards.

**Defendant Thiel**

43.     Defendant Peter Thiel ("Thiel") cofounded the Company and has served as the Chair of the Board since 2003. As of April 13, 2022, Defendant Thiel owned 130,670,931 shares of Palantir's Class A common stock (representing 6.7%), 32,549,248 of Palantir's Class B common stock (representing 32.8%), and 335,000 shares of Palantir's Class F common stock (representing 33.3%). At the close of trading on April 13, 2022, Palantir's stock price was $12.90 per share, thus, Defendant Thiel owned approximately $1.6 billion worth of Palantir stock as of that date.

**Nominal Defendant Palantir**

9

44.     Palantir is a Delaware corporation with its principal executive offices located at 1555 Blake Street, Suite 250, Denver, Colorado 80202. Palantir's shares of Class A common stock trade on the New York Stock Exchange (the "NYSE") under the symbol "PLTR."

## MISCONDUCT OF THE INDIVIDUAL DEFENDANTS

### Company Overview

45.     Founded in 2003, Palantir designs software for businesses and organizations, both domestic and international, to optimize decisions and operations through analyzing data. The Company began by designing software for the United States Government's intelligence organizations to aid in counterterrorism activities. The Company is divided into two parts: governmental and commercial.

46.     In addition to designing software, Palantir invests in securities of publicly traded companies.

47.     The Company has asserted that recent world-wide events, including war, economic instability, and the COVID-19 pandemic, are a boon for its business since Palantir's products are intended to aid businesses and organizations in dealing with disruptive events.

### False and Misleading Statements

### November 9, 2021 Conference Call

48.     On November 9, 2020, the Company held an earnings call on the Company's performance for the third quarter of 2021. During the call, Defendant Sankar spoke about Palantir's growing government customer base, stating "[w]e have a motivating set of customers and growing pipeline for big pursuits in '22 and beyond, and it is growing every quarter. We're not just competing for programs. Our unique capabilities are creating their own opportunities."

49.     Defendant Sankar elaborated:

> One thing -- perhaps the one thing we have demonstrated to the market is that it is possible to sell software at scale to the government for programs of record where the government might have historically otherwise bought labor and services. And of course in doing so, we have radically transformed the margin profile of these big government contracts. There is an immense opportunity in this sector to partner with existing government contractors to productize their solutions that they are delivering as services today and in doing so, to transform the EBITDA they generate against their existing revenue with our platforms.

50.     During the call, Defendant Sankar was asked a question on "the future of Palantir's Public Sector business, including if there are any billion-dollar contracts like the latest U.S. Army wins in the pipeline[,]" Defendant Sankar replied that Palantir was "uniquely position[ed] . . . for future U.S. Army programs" because the Company won multiple government contracts in the third quarter of 2021. He further elaborated:

> But that's just the army. We had incredible opportunity that Space force[] and at the Air Force, places that we are investing a lot, we're building on [Indiscernible] Project from [Indiscernible] air force and that forecourt space force reporting to the Space domains awareness platform. A very unique position. We have many independent opportunities to extend the work that we have done under, under USDI and NGA into the Combatant Commands themselves to directly take on near-peer threats . . . . Beyond defense, we see immense opportunities in our pipeline across health from the NHF and VA to the NIH and HHS. We see new opportunities within the Defense Industrial Base in its own right as customers to help them with their own manufacturing, but also in being a strategic partner, helping them capture new revenue streams by AI enabling their hardware platforms. This pipeline has aggregated fee in building. And all of this is happening despite the macro headwinds that we've all heard about across government services.

> COVID's impact on delaying the pace of work. And we are just competing for known opportunities. Our capabilities are so unique, we're creating our own opportunities. The macro factors here are big, big tailwinds for us. Clear consensus on the threat from an aggressive CCP, not only in terms of impacts on demand in the U.S. but also in Japan, Korea, Australia, the UK, the west and her allies broadly. The infrastructure bill, and our fit on the programs and awards that are being driven there. Carbon emissions management, EV charging infrastructure, building on our incredible commercial momentum in the mobility value chain. Delivery of major projects on time and on budget, and more broadly, the opportunity for SIs and primes on infrastructure projects to partner with Palantir, to develop their own high-margin software streams in place of historically low-margin nonrecurring services on our platforms. We are just at the beginning of big secular trends here. Trends

that we anticipated and have invested in for years. We are uniquely positioned, cutting-edge product, ready to meet its moment.

**November 9, 2021 Form 10-Q**

51.     On the same day, November 9, 2021, Palantir filed its quarterly report on Form 10-Q with the SEC for the quarter ended September 30, 2021 (the "2021 Q3 10-Q"). Defendants Karp and Glazer signed the 2021 Q3 10-Q.

52.     The 2021 Q3 10-Q contained Sarbanes-Oxley Act of 2002 ("SOX") certifications signed by Defendants Karp and Glazer attesting to the accuracy of the financial statements contained therein, the disclosure of any material changes to the Company's internal controls, and the disclosure of any fraud committed by the Company, its officers, or its directors.

53.     The 2021 Q3 10-Q represented that Palantir "ha[s] built lasting and significant customer relationships with some of the world's leading government institutions . . ." and "anticipate[s] that [its] reach among an increasingly broad set of customers, in both the commercial and government sectors, will accelerate moving forward."

54.     The 2021 Q3 10-Q stated the following regarding marketable securities:

Marketable securities consist of equity securities in publicly-traded companies and are recorded at fair market value each reporting period. Realized and unrealized gains and losses are recorded in other income (expense), net on the condensed consolidated statements of operations. During the three and nine months ended September 30, 2021, the Company recorded net unrealized losses of $7.2 million within other income (expense), net on the condensed consolidated statements of operations.

**February 17, 2022 Conference Call**

55.     On February 17, 2022, the Company held an earnings call for the fourth quarter of 2021 and the full year of 2021. During the call, a Jeffries analyst asked for the Individual Defendants' "perspective on what's happening on the government side[]" since the government "decelerate[d] pretty materially in Q1 in terms of the growth." Defendant Karp responded by

stating that "the biggest problem is barrier to entry, which we've clearly solved and then rebarriers

to entry, which we've solved or solving, but that's going very well." He went on to say:

> Well, there's a couple of things that are happening there. So if you were looking at this more like from a scientific perspective, you had a time series that's 15 years, first thing you would do is say, okay, what's happening in that time series over the 15 years. What you see in U.S. gov is a compounded growth of 30%, but like this, which is the positive of U.S. gov is it's reliable. The sums are big. The quality of the revenue is very high.

> The -- one of their -- essentially, there are a number of problems, but **the biggest problem is barrier to entry, which we've clearly solved and then rebarriers to entry, which we've solved or solving, but that's going very well.** And then the second one is lumpiness. Now you -- that lumpiness still exists. And actually, in some ways, it's worse because to get the integral to grow, you need these massive deals. We also have small deals, but the fact that we are on the biggest, most important parts of the U.S. government on our software is.

> So there's really a twofold answer to your question. One, what will happen this year? Are there -- is there deceleration in actual one over a long time series? The answer is clearly no. But then the question is, if the baseline is 30, how does it get to where we want it, which was like the beginning of last year. And now at the end of last year, and the way that happens is the deals we're already positioned to win actually closed.

> (Emphasis added.)

56.    Further, Defendant Karp represented that the "danger[s] of the world" will

"positively affect [Palantir's] revenue," stating:

> [I]f you just look at that chart, I showed you with the [compound annual growth rate (CAGR)] on Foundry, these are the most important programs for a dangerous world.

> Now I can't go into all the details, but we used to debate with people, especially my academic friends if the world was dangerous. The danger of the world being clear and present to the U.S. government is very protective. It doesn't guarantee that when this integral actually -- how it behaves, but **it makes it much more likely that it will happen here and positively affect our revenue which is another reason why I suspect that we will do well.**

> (Emphasis added.)

**February 24, 2022 Form 10-K**

13

57.    On February 24, 2022, Palantir filed its annual report on Form 10-K with the SEC for FY 2021 (the "2021 10-K"). All of the Individual Defendants signed the 2021 10-K, excluding Defendant Sankar. The 2021 10-K contained SOX certifications signed by Defendants Karp and Glazer attesting to the accuracy of the financial statements contained therein, the disclosure of any material changes to the Company's internal controls, and the disclosure of any fraud committed by the Company, its officers, or its directors.

58.    The 2021 10-K stated that Palantir "ha[s] built lasting and significant customer relationships with some of the world's leading government institutions" and that it "anticipate[s] that [its] reach among an increasingly broad set of customers, in both the commercial and government sectors, will accelerate moving forward."

59.    Again, Palantir noted in the 2021 10-K that "[r]ecent crises and systemic shocks, such as the COVID-19 pandemic" has given rise to "customers [] increasingly adopting [Palantir's] software . . . over internal software development efforts."

60.    The 2021 10-K also tried to bring attention to Palantir's marketable securities and the risks associated with them, but only provided boilerplate language and did not announce the known risks of the Company's marketable securities' negative effect on EPS, stating in relevant part:

> As of December 31, 2021, we had outstanding investments valued at $234.2 million in marketable securities. We may continue to make additional investments or sell the existing investments. These investments are often in early- or growth-stage companies that have minimal public trading history; as such the fair value of these investments may fluctuate depending on the financial outcome and prospects of the investees, as well as global market conditions including recent and ongoing volatility related to the impacts of COVID-19. Additionally, early-stage companies are inherently risky because the technologies or products these companies have under development are typically in the early phases and may never materialize, and they may experience a decline in financial condition, which could result in a loss of a substantial part of our investment in these companies. We record gains or losses as the fair value of these investments change and as we sell them. We anticipate

14

additional volatility to our consolidated statements of operations due to changes in market prices, and as such gains and losses are realized. During the fiscal year ended December 31, 2021, net unrealized losses of $72.8 million related to marketable securities were recorded in other income (expense), net on the consolidated statements of operations.

61.     The statements in ¶¶ 48–60 were materially false and misleading, and they failed to disclose material facts necessary to make the statements made not false and misleading. Specifically, the Individual Defendants improperly failed to disclose, *inter alia*: (i) Palantir's EPS numbers were negatively impacted by the Company's investments in securities; (ii) Palantir exaggerated the overall sustainability of the Company's government sector in relation to growth and revenue; (iii) in result, Palantir's revenue growth in the government sector was falling despite the ongoing occurrence of several international crises; (iv) as a consequence of the foregoing, it was probable the Company would be unable to reach its projections for the first quarter of 2022 EPS as well as its second quarter of 2022 sales estimates; and (v) Palantir failed to maintain internal controls. Consequently, Palantir's public statements were materially false and misleading at all relevant times.

### 2022 Proxy Statement

62.     On April 28, 2022, Palantir filed its annual proxy statement on Schedule 14A with the SEC (the "2022 Proxy Statement"), which Defendants Karp, Cohen, Moore, Rascoff, Schiff, Stat and Thiel solicited. The 2022 Proxy Statement contained material misstatements and omissions of material fact in violation of 14(a) of the Exchange Act.

63.     The 2022 Proxy Statement asked for Palantir stockholders to, among other things, (i) elect Defendants Karp, Cohen, Moore, Schiff, Stat, Thiel, and non-party Eric Woersching ("Woersching"), to the Board and (ii) ratify Ernst & Young LLP as Palantir's independent registered public accounting firm for the fiscal year ending December 31, 2022.

64.     The 2022 Proxy Statement provided the following about Palantir's Code of

Conduct:

> In addition, our Board of Directors has adopted a code of conduct that applies to all
> of our officers, directors, employees, contractors, and consultants, including our
> CEO, CFO, and other executive and senior financial officers. The full text of our
> corporate governance guidelines and our code of conduct is posted on the investor
> relations        page        on        our        website        at
> https://investors.palantir.com/governance/governance-documents.   We  intend  to
> disclose any amendments to our code of conduct, or waivers of its requirements, on
> our website or in filings under the Exchange Act.

65.     The 2022 Proxy Statement provided the following about the Role of the Board of

Directors in Risk Oversight:

> Risk is inherent with every business, and we face a number of risks, including
> strategic, financial, business and operational, legal and compliance, and
> reputational. We have designed and implemented processes to manage risk in our
> operations. Management is responsible for the day-to-day management of risks we
> face, while our Board of Directors, as a whole and assisted by its committees, has
> responsibility for the oversight of risk management. Our Board of Directors reviews
> strategic and operational risk, including cybersecurity risk, in the context of
> discussions, question and answer sessions, and reports from the management team
> at each regular Board of Directors meeting, receives reports on all significant
> committee activities at each regular Board of Directors meeting, and evaluates the
> risks inherent in significant transactions.

66.     The 2022 Proxy Statement provided the following about the Audit Committee's

oversight responsibilities:

> In addition, our Board of Directors has tasked designated standing committees with
> oversight of certain categories of risk management. Our Audit Committee assists
> our Board of Directors in fulfilling its oversight responsibilities with respect to risk
> management in the areas of internal control over financial reporting and disclosure
> controls and procedures, legal and regulatory compliance, and also, among other
> things, discusses with management and the independent auditor guidelines and
> policies with respect to risk assessment and risk management. Our Compensation,
> Nominating & Governance Committee assesses risks relating to our executive
> compensation plans and arrangements and assesses risks relating to our corporate
> governance practices, the performance of our Board of Directors, and the
> composition of our Board of Directors.

67.     The 2022 Proxy Statement was materially false and misleading because, despite representations to the contrary, Palantir's Code of Conduct was not followed, as seen by the multitude of false and misleading statements presented herein and the insider trading completed by six of the Individual Defendants.

68.     Defendants Karp, Cohen, Moore, Rascoff, Schiff, Stat and Thiel further caused the 2022 Proxy Statement to be false and misleading by failing to disclose, *inter alia*, that: (i) Palantir's EPS numbers were negatively impacted by the Company's investments in securities; (ii) Palantir exaggerated the overall sustainability of the Company's government sector in relation to growth and revenue; (iii) in result, Palantir's revenue growth in the government sector was falling despite the ongoing occurrence of several international crises; (iv) as a consequence of the foregoing, it was probable the Company would be unable to reach its projections for the first quarter of 2022 EPS as well as its second quarter of 2022 sales estimates; and (v) Palantir failed to maintain internal controls. Consequently, Palantir's public statements were materially false and misleading at all relevant times.

69.     The 2022 Proxy Statement was false and misleading because, despite assertions to the contrary, its Code of Conduct was not followed, as evidenced by the numerous false and misleading statements alleged herein and the insider trading engaged in by six of the Individual Defendants.

70.     As a direct consequence of Defendants Karp, Cohen, Moore, Rascoff, Schiff, Stat and Thiel causing the 2022 Proxy Statement to be false and misleading, Palantir stockholders voted, *inter alia*, to elect Defendants Karp, Cohen, Moore, Schiff, Stat, Thiel, and non-party Woersching, to the Board, allowing them to continue breaching their fiduciary duties to the Company.

**The Truth Emerges**

71.     On May 9, 2022, Palantir published its first quarter of 2022 financial performance in a press release. The release reported that the Company's adjusted earnings per share ("EPS") was just $0.02, despite analyst projecting EPS of $0.04 per share. That same day, in a conference call, the Company conceded that the EPS number "include[d] a negative $0.02 impact driven primarily by unrealized losses on marketable securities."

72.     In the same press release, the Company reported that government revenue grew by 16% year-over-year. When compared against previous quarters, the revenue growth was lackluster and indicated a material decline in revenue. Further, Palantir estimated just $470 million in sales for the second quarter of 2022, significantly less than analyst estimates of $483.76 million.

73.     On this news, the price of Palantir's securities fell $2.02, or 21.31%, from $9.48 per share at the close of trading on May 6, 2022 to $7.46 per share at the close of trading on May 9, 2022.

74.     Additionally, on May 9, 2022, several news organizations reported that Palantir's decline in revenue took investors by surprise because the Company previously flouted the occurrence of armed conflict such as the Russian invasion of Ukraine and the ongoing COVID-19 pandemic as events that would bolster the Company's business.

75.     For instance, on May 9, 2022, Bloomberg released an article entitled "Palantir Craters Most Since 2020 on Wider-Than-Expected Loss." The article noted that Palantir "shares plummeted as much as 22% . . . the biggest intraday drop since September 2020, after the software maker reported mounting losses and a disappointing sales forecast." The article further elaborated: in the quarter that ended in March, revenue growth from government customers slowed to 16% with sales totaling $241.7 million," which was "the slowest quarterly growth for the segment since

Palantir began reporting results as a public company in late 2020." This lackluster growth continued "despite new and expanded deals with agencies spurred by continuing fallout from the pandemic and rising geopolitical tensions, particularly the Russia-Ukraine conflict."

76.     Also on May 9, 2022, *the Motley Fool* released an article entitled "Why Palantir Stock Crashed Today." This article stated that "[t]he data-mining leader's slowing growth drove many investors to sell their shares." and that Palantir's "larger government business saw revenue rise by only 16%, to $241 million." Importantly, the article stated that the lackluster revenue "was a surprise to investors, as the company was widely believed to see significantly higher demand for its government- and defense-focused data services due to the war in Ukraine."

77.     Similarly, in yet another news article published on May 9, 2022, Investor's Business Daily, wrote in an article entitled, "Palantir Earnings, Revenue Guidance Miss Amid Slowing Government Growth," that Palantir's "stock plunged as revenue guidance came in below expectations amid slowing government growth."

**INSIDER SALES**

78.     Defendants Karp, Glazer, Sankar, Cohen, Moore, and Rascoff all engaged in insider trading, at artificially inflated prices caused by the false and misleading statements at issue. Their collective proceeds approach $99.37 million.

79.     The stock sales that Defendants Karp, Glazer, Sankar, Cohen, Moore, and Rascoff executed shortly after they caused Palantir to issue false and misleading statements contribute to an inference that they knew of the falsity of the statements and were selling their stock ownership while Palantir's common stock continued to trade at artificially inflated prices.

80.     For instance, after the issuance of the November 9, 2021 conference call and 2021 Q3 10-Q, Defendant Karp unloaded 638,629 shares of Palantir common stock on November 16,

17, and 18 for proceeds of $43.19 million, and Defendant Rascoff unloaded 25,000 shares on November 11, 2021 for proceeds of $571,425.

81.     Similarly, after the February 17, 2022 conference call, Defendant Glazer unloaded 68,070 shares of Palantir stock on February 22, 2022, 26,477 shares on February 23, 2022, and 106,643 shares on February 24, 2022, for collective proceeds of $2.23 million. In the same vein, Defendant Sankar unloaded 194,817 shares on February 22, 2022 and 72,055 shares on February 23, 2022, for collective proceeds of $2.85 million; and Defendant Cohen sold 251,863 shares on February 22, 2022 and 93,155 shares on February 23, 2022, for collective proceeds of $3.69 million.

82.     The size and timing of the insider sales, executed while Palantir's common stock traded at artificially inflated prices, illustrates that Defendants Karp, Glazer, Sankar, Cohen, Moore, and Rascoff knew of the improprieties and falsity of the statements made and that they used this inside information to enrich themselves while Palantir's common stock remained inflated.

## DAMAGES TO PALANTIR

83.     As a direct and proximate result of the Individual Defendants' conduct, Palantir has been seriously harmed and will continue to be harmed. The Company will be subject to vast expenditures including, but not limited to:

(a) Legal fees incurred in connection with the Class Action filed against Palantir and its CEO, CFO, and COO;

(b) Costs incurred from the compensation and benefits paid to the Individual Defendants who have breached their fiduciary duties Palantir;

(c) Costs incurred from remedying the material weaknesses in Palantir's financial reporting controls.

84.     Additionally, Palantir's business, goodwill, and reputation with its industry partners, regulators, and stockholders have been gravely tarnished. For the foreseeable future, the Company will suffer from a "liar's discount" from the Company's misrepresentations and the Individual Defendants' breaches of fiduciary duties.

## DERIVATIVE ALLEGATIONS

85.     Plaintiff brings this action derivatively and for the benefit of Palantir to redress injuries suffered and will suffer as a direct result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Palantir and violations of the Exchange Act, as well as the aiding and abetting thereof. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

86.     Plaintiff has continuously been a stockholder of Palantir at all relevant times. Plaintiff will adequately and fairly represent the interests of Palantir in enforcing and prosecuting its rights.

## DEMAND IS EXCUSED AS FUTILE

87.     Plaintiff incorporates by reference and re-alleges each and every allegation stated above as if fully set forth herein.

88.     When this action was filed, Palantir's Board consisted of seven individuals: Defendants Karp, Cohen, Moore, Schiff, Stat and Thiel (collectively, the "Director-Defendants"), along with non-party Woersching (together with the Director-Defendants, the "Directors"). Plaintiff needs only to allege demand futility as to four of the seven Directors that were on the Board at the time this action was commenced.

89.     Demand is excused as to all of the Director-Defendants because each them of them faces, individually and collectively, a substantial likelihood of liability as a result of the scheme

they engaged in knowingly or recklessly to make and/or cause the Company to make false and misleading statements and omissions of material facts, which renders them unable to impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme.

90. In complete abdication of their fiduciary duties, the Director-Defendants either knowingly or recklessly participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. The fraudulent scheme was, *inter alia*, intended to make the Company appear more profitable and attractive to investors. As a result of the foregoing, demand would be futile, and thus excused, as the Director-Defendants breached their fiduciary duties, face a substantial likelihood of liability, and are not disinterested.

91. **Defendant Karp** - Defendant Karp is a co-founder of Palantir and has served as the Company's CEO and as a director since 2003. Therefore, as Palantir admits, he is a non-independent director. The Company provides Defendant Karp with his principal occupation for which he receives significant compensation as detailed above.

92. As CEO, he is ultimately responsible for all of the false and misleading statements and omissions that were made during the Relevant Period, including his solicitation of the 2022 Proxy Statement, which re-elected him to the Board, thereby allowing him to continue to breach his fiduciary duties to the Company. As the Company's highest officer and as a trusted Board member, he conducted little, if any, oversight of the schemes to cause the Company to make false and misleading statements, consciously disregarded his duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Furthermore, Defendant Karp is a defendant in the Class Action. As a result,

Defendant Karp breached his fiduciary duties, faces a substantial likelihood of liability, and is not independent or disinterested. Thus, demand upon Defendant Karp is futile and excused.

93.      **Defendant Cohen** - Defendant Cohen is a co-founder of Palantir and has served as the Company's President, Secretary, and as a director since 2005. Therefore, as Palantir admits, he is a non-independent director. The Company provides Defendant Cohen with his principal occupation for which he receives significant compensation as detailed above.

94.      As a trusted Company director, he conducted little, if any, oversight of the scheme to cause Palantir to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Furthermore, Defendant Cohen solicited the 2022 Proxy Statement which contained false and misleading statements and led to shareholders re-electing him to the Board, thereby allowing him to continue to breach his fiduciary duties to the Company. As a result, Defendant Cohen breached his fiduciary duties, faces a substantial likelihood of liability, and is not independent or disinterested. Thus, demand upon Defendant Cohen is futile and excused.

95.      **Defendant Moore** - Defendant Moore has served as a Company director since July 2020. The Company provides Defendant Moore with significant compensation for his role as a director as detailed above.

96.      As a trusted Company director, he conducted little, if any, oversight of the scheme to cause Palantir to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Furthermore, Defendant Moore solicited the 2022 Proxy Statement which contained false and misleading statements and led to shareholders re-electing him to the Board, thereby allowing him to continue to breach his fiduciary duties to the Company. As

a result, Defendant Moore breached his fiduciary duties, faces a substantial likelihood of liability, and is not independent or disinterested. Thus, demand upon Defendant Moore is futile and excused.

97.     **Defendant Rascoff** - Defendant Rascoff has served as a Company director from July 2020 until June 2022. The Company provides Defendant Rascoff with significant compensation for his role as a director as detailed above.

98.     As a trusted Company director, he conducted little, if any, oversight of the schemes to cause Palantir to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the schemes, and consciously disregarded his duties to protect corporate assets. Furthermore, Defendant Rascoff solicited the 2022 Proxy Statement which contained false and misleading statements and led to shareholders re-electing him to the Board, thereby allowing him to continue to breach his fiduciary duties to the Company. As a result, Defendant Rascoff breached his fiduciary duties, faces a substantial likelihood of liability, and is not independent or disinterested. Thus, demand upon Defendant Rascoff is futile and excused.

99.     **Defendant Schiff** - Defendant Schiff has served as a Company director since July 2020. The Company provides Defendant Schiff with significant compensation for her role as a director as detailed above.

100.     As a trusted Company director, she conducted little, if any, oversight of the schemes to cause Palantir to make false and misleading statements, consciously disregarded her duties to monitor such controls over reporting and engagement in the schemes, and consciously disregarded her duties to protect corporate assets. Furthermore, Defendant Schiff solicited the 2022 Proxy Statement which contained false and misleading statements and led to shareholders re-electing her to the Board, thereby allowing her to continue to breach her fiduciary duties to the Company. As

a result, Defendant Schiff breached her fiduciary duties, faces a substantial likelihood of liability, and is not independent or disinterested. Thus, demand upon Defendant Schiff is futile and excused.

101.    **Defendant Stat** - Defendant Stat has served as a Company director since January 2021. The Company provides Defendant Stat with significant compensation for her role as a director as detailed above.

102.    As a trusted Company director, she conducted little, if any, oversight of the schemes to cause Palantir to make false and misleading statements, consciously disregarded her duties to monitor such controls over reporting and engagement in the schemes, and consciously disregarded her duties to protect corporate assets. Furthermore, Defendant Stat solicited the 2022 Proxy Statement which contained false and misleading statements and led to shareholders re-electing her to the Board, thereby allowing her to continue to breach her fiduciary duties to the Company. As a result, Defendant Stat breached her fiduciary duties, faces a substantial likelihood of liability, and is not independent or disinterested. Thus, demand upon Defendant Stat is futile and excused.

103.    **Defendant Thiel** - Defendant Thiel is one of Palantir's cofounders and has served as Chair of the Board since 2003. The Company provides Defendant Thiel with significant compensation for his role as a director as detailed above.

104.    As a trusted Company director, he conducted little, if any, oversight of the schemes to cause Palantir to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the schemes, and consciously disregarded his duties to protect corporate assets. Furthermore, Defendant Thiel solicited the 2022 Proxy Statement which contained false and misleading statements and led to shareholders re-electing him to the Board, thereby allowing him to continue to breach his fiduciary duties to the Company. As a result, Defendant Thiel breached his fiduciary duties, faces a substantial likelihood of liability,

and is not independent or disinterested. Thus, demand upon Defendant Thiel is futile and excused.

105.    Additional reasons that demand on the Board is futile follow.

106.    **Audit Committee Defendants** - Defendants Rascoff, Moore, and Stat (the "Audit Committee Defendants"), served on the Company's Audit Committee during the Relevant Period. Pursuant to the Company's Audit Committee Charter, the Audit Committee Defendants were responsible for overseeing, *inter alia*, the integrity of the Company's financial statements, compliance with legal and regulatory requirements, and matters implicating ethical concerns. The Audit Committee Defendants failed to ensure the integrity of the Company's financial statements and internal controls, as they are charged to do under the Audit Committee Charter, allowing the Company to file false and misleading financial statements with the SEC. Thus, the Audit Committee Defendants breached their fiduciary duties and are not disinterested. Therefore, demand is excused and futile as to the Audit Committee Defendants.

107.    Palantir has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Director-Defendants have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Palantir any part of the damages Palantir suffered and will continue to suffer thereby. Thus, any demand upon the Director-Defendants would be futile.

108.    The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Director-Defendants can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Director-Defendants face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable

of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

109.    The acts complained of herein constitute violations of fiduciary duties owed by Palantir's officers and directors, and these acts are incapable of ratification.

110.    Thus, for all of the reasons set forth above, all of the Director-Defendants, and, if not all of them, at least four of the Directors, cannot consider a demand with disinterestedness and independence. Therefore, a demand upon the Board is excused as futile.

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

111.    By reason of their positions as officers, directors, and/or fiduciaries of the Company, each of the Individual Defendants owed and owe Palantir and its stockholders fiduciary obligations of care, good faith, and loyalty, and were and are required to use their utmost ability to control and manage Palantir in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of Palantir's best interests and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to Palantir and its stockholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligations of fair dealing.

112.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of Palantir, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. To discharge their duties, the officers and directors of Palantir were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company. By virtue of such duties, the officers and directors of Palantir were required to, among other things:

(a)   conduct the affairs of the Company in an efficient, business-like manner in a fashion that complies with all state and federal laws.

(b)   remain informed as to how Palantir conducts its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, such as issuing false and misleading statements, make reasonable inquiry therewith, and take steps to correct such conditions or practice and make disclosures as necessary to comply with applicable laws;

(c)   keep accurate records and reports of the business and internal affairs of Palantir and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(d)   manage internal legal, financial, and management controls, such that Palantir's operations comply with all applicable laws and Palantir's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's stockholders would be accurate;

(e)   ensure public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to publish are truthful and accurate;

(f)   Refrain from unduly benefiting themselves and other Company insiders at the expense of the Company and its stockholders.

## **FIRST CLAIM**

**Against Defendants Karp, Cohen, Moore, Rascoff, Schiff, Stat and Thiel for Violations of Section 14(a) of the Exchange Act**

113.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

114.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

115.    Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

116.    Defendants Karp, Cohen, Moore, Rascoff, Schiff, Stat and Thiel further caused the 2022 Proxy Statement to be false and misleading by failing to disclose, *inter alia*, that: (i) Palantir's EPS numbers were negatively impacted by the Company's investments in securities; (ii) Palantir exaggerated the overall sustainability of the Company's government sector in relation to growth and revenue; (iii) in result, Palantir's revenue growth in the government sector was falling despite the ongoing occurrence of several international crises; (iv) as a consequence of the foregoing, it was probable the Company would be unable to reach its projections for the first quarter of 2022 EPS as well as its second quarter of 2022 sales estimates; and (v) Palantir failed to maintain internal

controls. Consequently, Palantir's public statements were materially false and misleading at all relevant times.

117.    The 2022 Proxy Statement was false and misleading because, despite assertions to the contrary, its Code of Conduct was not followed, as evidenced by the numerous false and misleading statements alleged herein and the insider trading engaged in by six of the Individual Defendants.

118.    Palantir was damaged as a result of the Individual Defendants' material misrepresentations and omissions in the 2022 Proxy Statement.

119.    Plaintiff on behalf of Palantir has no adequate remedy at law.

## SECOND CLAIM

### Against Individual Defendants for Breach of Fiduciary Duties

120.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

121.    Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Palantir's business and affairs.

122.    Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

123.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Palantir.

124.    In breach of their fiduciary duties, the Individual Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

125.    In further breach of their fiduciary duties owed to Palantir, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements and omissions of material fact that failed to disclose, *inter alia*: (i) Palantir's EPS numbers were negatively impacted by the Company's investments in securities; (ii) Palantir exaggerated the overall sustainability of the Company's government sector in relation to growth and revenue; (iii) in result, Palantir's revenue growth in the government sector was falling despite the ongoing occurrence of several international crises; (iv) as a consequence of the foregoing, it was probable the Company would be unable to reach its projections for the first quarter of 2022 EPS as well as its second quarter of 2022 sales estimates; and (v) Palantir failed to maintain internal controls. Consequently, Palantir's public statements were materially false and misleading at all relevant times.

126.    The Individual Defendants failed to correct and caused the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact referenced herein, rendering them personally liable to the Company for breaching their fiduciary duties.

127.    The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities.

128.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent scheme set forth herein and to fail to maintain adequate internal controls. The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent scheme set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent scheme and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities. The Individual Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

129.    These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

130.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Palantir has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

131.    Plaintiff on behalf of Palantir has no adequate remedy at law.

**PRAYER FOR RELIEF**

132.    FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)    Declaring that Plaintiff may maintain this action on behalf of Palantir, and that Plaintiff is an adequate representative of the Company;

(b)    Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Palantir;

(c)     Determining and awarding to Palantir the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(d)     Directing Palantir and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Palantir and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws or Articles of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

1. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

2. a provision to permit the shareholders of Palantir to nominate at least two candidates for election to the Board; and

3. a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations.

(e)     Awarding Palantir restitution from the Individual Defendants, and each of them;

(f)     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

(g)     Granting such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: January 27, 2023                     Respectfully submitted,

Of Counsel:                                 **FARNAN LLP**

**THE ROSEN LAW FIRM, P.A.**                /s/ Michael J. Farnan
                                            Brian E. Farnan (Bar No. 4089)
Phillip Kim                                 Michael J. Farnan (Bar No. 5165)
275 Madison Avenue, 40th Floor              919 N. Market St., 12th Floor
New York, NY 10016                          Wilmington, DE 19801
Telephone: (212) 686-1060                   Telephone: (302) 777-0300
Facsimile: (212) 202-3827                   Facsimile: (302) 777-0301
Email: pkim@rosenlegal.com                  Email: bfarnan@farnanlaw.com
                                            Email: mfarnan@farnanlaw.com

                                            *Attorneys for Plaintiff*